



**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

Uni.... States District Court
Southern District of Texas
FILED

**SEP 0 6 2001**

Michael N. Milby
Clerk of Court

-------------------------------------------------------

**TOP RANK, INC., A FOREIGN**
**CORPORATION** as Broadcast
Licensee of the **SEPTEMBER 18, 1998**
**De La HOYA / CHAVEZ** Program,

CIVIL ACTION NO.: B-01-088

Plaintiff,

-against-

GABRIEL MARTINEZ, Individually, d/b/a 4-ACRES
CAFÉ a/k/a  4 ACES CAFÉ and 4-ACRES CAFÉ
a/k/a 4 ACES CAFÉ; *et al.*,

Defendants.

-----------------------------------------------------------

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT

The within Memorandum of Law is in support of Plaintiff's Motion for Summary Judgment as

against Defendant **GEORGIANNA MARIE FRICKE, Individually, d/b/a LOS TRES AMIGOS BAR,**

**and LOS TRES AMIGOS BAR.**

### PROCEDURAL HISTORY

Plaintiff commenced the within action as against Defendant **GEORGIANNA MARIE FRICKE,**

**Individually, d/b/a LOS TRES AMIGOS BAR, and LOS TRES AMIGOS BAR** (hereinafter referred to

collectively as "Defendant"), on or about May 29, 2001, with the filing of the Summons and Complaint,

alleging that Defendant violated 47 U.S.C. §553 and §605 (the "Communications Act") when she and/or her

agents, servants, workmen or employees unlawfully intercepted, received and/or descrambled the encrypted

satellite signal transmitting the **DE LA HOYA/CHAVEZ** event on September 18, 1998, and exhibited the

event for purposes of direct or indirect commercial advantage or private financial gain in violation of

Plaintiff's rights to distribute the event.

-1-

Following service of the Summons and Complaint, Defendant served an Answer upon Plaintiff on or about August 20, 2001. With consent from Defendant's husband, the named holder of Defendant commercial establishment's Dish Network account, Plaintiff obtained an account history from Dish Network, Defendant's satellite provider. The account history clearly demonstrates that the event was exhibited in Defendant's commercial establishment at a residential rate. Based upon this, Plaintiff brings the instant Motion as there exists no issue of material fact to present to a trier of fact.

## ARGUMENT

## PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be granted upon a finding that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Celotex Corp. v. Catrett, 477 U.C. 317, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). A dispute is genuine if, upon the evidence, a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986). In deciding a Motion for Summary Judgment, the Court is not to weigh the evidence in an effort to determine the truth of the matter, but rather, the Court's function is to determine if there exists a genuine issue for trial. *Id.* at 249.

Plaintiff is entitled to Summary Judgment as Defendant herein willfully violated 47 U.S.C. §553 and §605 by exhibiting the De La Hoya/Chavez event on September 18, 1998, in violation of the rights of Plaintiff as the lawful possessor of the exclusive rights to distribute the event.

## 47 U.S.C. §§553 AND 605 ("THE PIRACY STATUTES")

The piracy statutes prohibit the unauthorized interception of subscription television scrambled signals. ON/TV of Chicago v. Julien (1985, CA 7 Ill) 763 F.2d 839. The piracy statutes provide both criminal and civil penalties to persons in violation of their provisions. Further, a private right of action, such as the one in the instant matter, exists under the piracy statutes. Ciminelli v. Cablevision (1984, EDNY) 583

-2-

F. Supp. 158.

Liability under the piracy statutes requires only that the defendant has (1) intercepted or aided interception of, and (2) divulged or published, or aided divulging or publishing of, communication transmitted by plaintiff. <u>California Satellite Systems v. Seimon</u> (1985, CA9 Cal) 767 F.2d 1364, 11 Media L R 2488. With regard to the instant matter, the piracy statutes provide for the recovery of statutory damages. The piracy statutes further provide for the recovery of costs and reasonable attorney's fees to a prevailing plaintiff. <u>International Cablevision, Inc. v. Sykes</u> (1993, CA2 NY) 997 F.2d 998.

Plaintiff's Verified Complaint against Defendant in this matter alleges that Defendant illegally exhibited the De La Hoya/Chavez event on September 18, 1998. Plaintiff is entitled to bring the instant action and is further entitled to damages against Defendant for its violation of the piracy statutes, as Plaintiff had the exclusive right to exhibit and/or distribute the De La Hoya /Chavez event on September 18, 1998, in Defendant's geographical area. Further, the piracy statutes provide a private right of action by Plaintiff against Defendant. *See*, e.g., <u>Oceanic Cablevision, Inc. v. M.D. Electronics</u> (1991, D.C. Neb) 771 F. Supp. 1019.

**PLAINTIFF HAD THE EXCLUSIVE RIGHT TO
EXHIBIT THE DE LA HOYA/CHAVEZ EVENT
SCHEDULED FOR SEPTEMBER 18, 1998**

Plaintiff held the exclusive rights to show and/or distribute the De La Hoya/Chavez event on September 18, 1998, in Defendant's geographical area, as referred to in the copyright ownership, annexed to Plaintiff's Affidavit.

Plaintiff, as the holder of the rights to distribution of the event to commercial establishments in Defendant's geographical area, contracted with various bars, restaurants and other commercial establishments for the rights to exhibit the fight within their establishments in exchange for a fee. In turn, businesses interested in exhibiting a particular fight contacted Plaintiff. Prior to the night of the particular event, Plaintiff produced a list of businesses which had contracted to exhibit the event, commonly called a

"legal list" within Plaintiff's industry. This list provided the name and address of each business which had legally purchased the right to exhibit the event from Plaintiff.

Prior to the exhibition of events such as the one at issue herein, investigators are hired to canvas various geographical areas in which Plaintiff has distribution rights. In the instant matter, that geographical area included Defendant's commercial establishment. On September 18, 1998, investigators proceeded to check various commercial establishments which were not on the legal list to determine whether those commercial establishments were exhibiting the event in question. If an investigator discovered that a commercial establishment which was not on the legal list exhibiting the event, the investigator prepared an Affidavit detailing the facts and circumstances surrounding his discovery.

## DEFENDANT DID NOT CONTRACT WITH PLAINTIFF TO EXHIBIT THE DE LA HOYA/CHAVEZ EVENT ON SEPTEMBER 18, 1998, IN HER COMMERCIAL ESTABLISHMENT, NOR DID PLAINTIFF GIVE DEFENDANT PERMISSION TO DO SO

In the instant matter, Defendant did not contract with Plaintiff for the right to exhibit the event in question in her commercial establishment. Defendant registered her commercial establishment as a residential account, which provided her with the means to exhibit the event in her commercial establishment without Plaintiff's permission. The fraudulent registration of the commercial establishment as a residential account is evidenced by the account history provided by Dish Network. In addition, an independent investigator discovered that Defendant was exhibiting the De La Hoya /Chavez event on September 18, 1998, in her commercial establishment, and that the establishment was not on the legal list. The investigator thereafter executed an Affidavit attesting to his observations.

## DEFENDANT, REGISTERED AS A RESIDENTIAL ACCOUNT, OBTAINED THE EVENT AT A RESIDENTIAL RATE

Defendant was able to obtain the event in question from Plaintiff by fraudulently listed her cable account as a residential account. Registering a commercial account as a residential account constitutes a modification under the piracy statutes, pursuant to §605(e)(4). Several jurisdictions have firmly established

-4-

that fraudulently passing off a commercial establishment as a residence to obtain a lower residential rate for cable service constitutes a violation of the piracy statutes. These Courts have held that, even when a defendant has been authorized to receive a cable service, if it then modifies or diverts the service without authorization, it may, nonetheless, be held liable under the piracy statutes. National Satellite Sports, Inc. v. Eliadis, Inc., 65 F. Supp.2d 662, 667 (N.D. Ohio 1999); Kingvision Pay-Per-View, Ltd. v. Julian Corp., No. 95C2096, 1966 WL 496600, at *2 (N.D. Ill. Aug. 29, 1996); That's Entertainment, Inc. v. J.P.T., Inc., 843 F. Supp. 995, (D. Md. 1993).

By fraudulently listing her receiver as a residential account, Defendant was able to receive cable programming at the greatly reduced rates designed specifically for *individual home use*. Commercial accounts, in contrast, have much higher rates, and commercial accounts are not permitted, by law, to receive and exhibit premium cable channels. Commercial account holders are instructed that they must contact a special distributor, in this case, Plaintiff, to arrange to purchase the right to exhibit the event. Defendant did not take this course of action because her commercial establishment is registered as a residential account.

Registering her account as a residential account, when, in reality, Defendant is a commercial establishment, constitutes fraud, as well as a modification intended to avoid higher commercial rates demanded by Plaintiff, in violation of the piracy statutes.

## DEFENDANT EXHIBITED THE DE LA HOYA/CHAVEZ BOXING EVENT BY OVERT AND INTENTIONAL ACTS

Defendant willfully and knowingly violated the within statute. Defendant's actions in purposely defrauding Plaintiff were affirmative and were accomplished by overt acts done specifically to avoid paying the legal subscription rate for a commercial establishment. Defendant's exhibition of the event in her commercial establishment demonstrates a *de facto* illegal showing.

Defendant's overt acts in registering her commercial establishment as a residential account, rather

ClibPDF - www.fastio.com

than as a commercial account, were intentional and were done for commercial financial gain, and required

scheming and overt acts, justifying the imposition of the maximum statutory damages.  Based upon Defendant's

acts, in addition to the investigator's Affidavit, Plaintiff respectfully requests that this Court grant Summary

Judgment in favor of Plaintiff.

## CONCLUSION

It is respectfully submitted that Plaintiff's Motion for Summary Judgment should be granted as to each

of the above named Defendants, as no genuine issues of material fact exist.

Plaintiff held the exclusive rights to distribute the De La Hoya /Chavez event on September 18, 1998,

to commercial establishments in the geographical area encompassing Defendant's place of business, and

Defendant did not contract with, or otherwise obtain permission from, Plaintiff for the right to exhibit the event

in her commercial establishment.

In light of the facts before the Court, Defendant clearly violated the piracy statutes by illegally

receiving and exhibiting the De La Hoya/Chavez event on September 18, 1998, thereby entitling Plaintiff to

Summary Judgement and damages.  Plaintiff respectfully requests that this Court grant Summary Judgement

in favor of Plaintiff and, thereafter, permit Plaintiff to submit authorities in support of damages, and for such

other and further relief as this Court deems just and proper under the circumstances.

Dated:  September 4, 2001
       Ellenville, New York

Respectfully submitted,

LONSTEIN LAW OFFICE, P.C.

Julie Cohen Lonstein
Attorney in Charge for Plaintiff
NYS Bar Roll No. 2393759
S.D. TX Admission No. 21857
1 Terrace Hill, P.O. Box 351
Ellenville, New York 12428
Telephone:  (845) 647-8500
Facsimile: (845) 647-6277
*Our File No. C98-2TX-S07*

-6-





**COPY**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 0 6 2001

Michael N. Milby
Clerk of Court

---------------------------------------------------------------

TOP RANK, INC., A FOREIGN
CORPORATION as Broadcast
Licensee of the **SEPTEMBER 18, 1998**
De La HOYA / CHAVEZ Program,

AFFIDAVIT OF SKIP KLAUBER, ESQ.

Plaintiff,

CIVIL ACTION NO.: B-01-088

-against-

GABRIEL MARTINEZ, Individually, d/b/a 4-ACRES
CAFÉ a/k/a 4 ACES CAFÉ and 4-ACRES CAFÉ
a/k/a 4 ACES CAFÉ; *et al.*,

Defendants.

--------------------------------------------------------------

STATE OF FLORIDA            )
                            )
COUNTY OF PALM BEACH  )

SKIP KLAUBER, being duly sworn, deposes and states the following:

1.      I am an attorney liceised and in good standing in the states of Georgia and Massachusetts, and am

piracy counsel for Plaintiff, **TOP RANK, INC.** (hereinafter referred to as "Top Rank"), and, as

such, am fully familiar with the facts, circumstances and proceedings heretofore had herein.

2.      I make this Affidavit in support of Plaintiff's Motion for Summary Judgment as against Defendant

**GEORGIANNA MARIE FRICKE, Individually, d/b/a LOS TRES AMIGOS BAR, and LOS**

**TRES AMIGOS BAR.**

3.      Plaintiff held the national closed circuit rights to distribute to commercial establishments the De La

Hoya/Chavez fight, which was held on September 18, 1998. That territory included the state of

Texas

4.      This event was marketed and sold to a number of locations in the state of Texas, none of which were

Defendant's commercial establishment, LOS TRES AMIGOS BAR, located at East Box 83, Post

Office Box 987, La Feria, Texas.

5.      The verification by an independent investigator that this event was exhibited at  LOS TRES

AMIGOS BAR without legal authorization to do so has caused significant damages to Top Rank, the

remedy of which is provided for in 47 U.S.C. §605.

6.      To explain the history of Plaintiff's claim, your deponent submits that, simultaneously with the

advent of pay-per-view showing of these types of broadcasts, Plaintiff began to experience a serious

erosion of the sales of pay-per-view broadcasts to commercial establishments throughout the United

States of America and, in particular, in the state of Texas.  Thereafter, we endeavored to determine

the basis for the erosion.  Much to our disappointment, we discovered that one of the causes of the

erosion of our customer base was the piracy of our broadcasts by unauthorized and unlicensed

establishments.

7.      In response, we embarked upon a program which was designed to identify and prosecute commercial

establishments which infringed our broadcasts for the average fight, For the De La Hoya/Chavez

fight, which was held on September 18, 1998, Top Rank expended significant efforts in anti-piracy

investigations.

8.      Top Rank engaged the services of paid licensed private investigative companies and auditing

agencies, which, in turn, paid a fee to each investigator or auditor in connection with each

unauthorized location which was observed and identified by each investigator or auditor.

9.      To ensure that only unauthorized locations were visited by the investigators and auditors, my

company prepared and distributed a list of authorized and legal locations which had paid the required

fee to broadcast the September 18, 1998, De La Hoya/Chavez fight.  This list was distributed to all

investigative and auditing agencies.

10.     Top Rank has paid millions of dollars for the rights to sell or sub-license boxing broadcasts and, with

the increased frequency of signal piracy, our legal sales have eroded substantially in recent years.

11.     It is essential that I communicate the Court that, tot he best of my knowledge, this programing is not

and cannot be mistakenly or innocently intercepted. Some methods by which a signal pirate can unlawfully intercept and broadcast such programs illegally are as follows, without limitation:

A.  The use of a "black box," which is purchased for a fee and, when installed on a cable television line, will allow for the descrambled reception of a pay-per-view broadcast; or

B.  The misrepresentation of a commercial establishment as a residential property, which permits the purchase of a pay-per-view broadcast for between the sums of $25.00 and $50.00; or

C.  The use of an illegal cable drop or splice from an apartment or home adjacent to the commercial establishment premises, with the purchase of the broadcast as a reidential price and diversion of the program to the commercial establishment; and/or

D.  The same initial actions being employed with respect to a "DSS Satellite System" or a "C-Band Satellite System."

12.   These forms of satellite theft also involve the misrepresentation of a residential location, purchase of illegal unencryption devices, and/or the purchase of illegal satellite authorization codes which are readily available on the Internet and in trad publications, which are presently unregulated in the nation of Canada.

13.   The Court has the discretion in the award of damages for these nefarious and illegal activities. It is respectfully submitted to this honorable Court that the unchecked activity of signal piracy has a negative effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs are necessarily increased significantly by these illegal activities.

14.   Top Rank believes that acts of signal piracy have cost the company millions of dollars in revenue in the last few years, while, at the same time, causing a reduction in lawful business resulting from the perceived lack of consequence for such unlawful interception.

15.     Therefore, I humbly ask this Court to grant the maximum allowance for statutory damages due to the fact that such actions are *per se* intentional and do not and cannot occur without the willful and intentional modification of electronic equipment, the business misrepresentation of a commercial establishment as a residential one, and/or the removal of cable traps or devices designed to prevent such unauthorized exhibits.

16.     Top Rank has expended additional hundreds of thousand of dollars with respect to our engagement of counsel to prosecute these matters.  Therefore, I would ask that the Court award reasonable attorneys fees to our counsel for the prosecution of this matter.

Date:    August 28, 2001

_____
Skip Klauber

Sworn before me on this 28ᵗʰ day
of August, 2001.

_____
Notary Public

OFFICIAL NOTARY SEAL
ELIZABETH R ANDERSON
NOTARY PUBLIC STATE OF FLORIDA
COMMISSION NUMBER
CC994438
MY COMMISSION EXPIRES
FEB. 25,2005